## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMAL TAYLOR, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No.:   23-4133-CSB |
| | ) | |
| | ) | |
| LT. FORD, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

**COLIN S. BRUCE, U.S. District Judge:**

This cause is before the Court on Defendants' motion for summary judgment. Contrary to their arguments, genuine questions of fact preclude summary judgment in Defendants' favor. In short, the Parties tell two different stories of the events that occurred on April 8, 2021. Accordingly, a jury must resolve these factual disputes, and Defendants' motion for summary judgment is denied.

## I.
## MATERIAL FACTS

Plaintiff Jamal Taylor Ramos is an inmate with the Illinois Department of Corrections ("IDOC"). Plaintiff is currently incarcerated at the IDOC's Menard Correctional Center ("Menard"), but the events that formed the basis for this lawsuit occurred when Plaintiff was housed at the IDOC's Henry Hill Correctional Center ("Hill"). During the relevant time, Defendants Lieutenant Ross Ford, Sergeant Kevin Johnson, and Lieutenant Martin Matherly were correctional officers employed by the IDOC who worked at Hill.

1

On April 8, 2021, Lt. Ford and Sgt. Johnson were part of a tactical team that had been tasked with performing compliance checks in certain cells at Hill. A compliance check is a search of an inmate's cell by correctional officers in which the officers verify that the inmates who are assigned to those cell do not possess any contraband and that the inmates' personal properly fits within the inmates' personal properly boxes. Plaintiff's cell was scheduled for a compliance check on April 8, 2021.

At around 9:30 a.m., Lt. Ford and Sgt. Johnson arrived at Plaintiff's cell for the compliance check, but the search did not proceed smoothly. During the compliance check, Lt. Ford directed Sgt. Johnson to spray Plaintiff with mace. After Sgt. Johnson complied, Lt. Ford and Sgt. Johnson placed Plaintiff into handcuffs behind Plaintiff's back and transported Plaintiff to Hill's restrictive housing unit, *i.e.*, to the segregation unit. Shortly thereafter, Plaintiff was transferred on a disciplinary transfer to Menard.[1]

Defendants have now moved for summary judgment on Plaintiff's claims against them. Further facts will be included *infra*, as necessary.

## II.
## LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Ruiz-Rivera v. Moyer*, 70 F.3d 498, 500-01 (7th Cir. 1995). The moving party has the burden of providing

---

[1] Menard is a maximum-security facility within the IDOC. Hill is a medium-security facility.

proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he must do more than simply show that there is some metaphysical doubt as to the material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 (Brennan, J., dissenting) (1986)(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III.
## QUESTIONS OF FACT PRECLUDE SUMMARY JUDGMENT

The basic facts set forth by the Court *supra* are the only facts upon which the Parties agree. On the specifics of what transpired on April 8, 2021, the Parties tell two different and contrasting stories. Therefore, a jury trial is needed to resolve their disputes.

**A.      Questions of Fact Preclude Summary Judgment on Plaintiff's Excessive Force Claim in violation of his Eighth Amendment Rights.**

The Eighth Amendment prohibits cruel and unusual punishment—including the application excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). Courts give deference to prison officials when the use of force involves security measures taken to quell a disturbance because "significant risks to the safety of inmates and prison staff" can be involved. *McCottrell*, 933 F.3d at 663 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the injury suffered by the prisoner. *Hendrickson*, 589 F.3d at 890.

In the instant case, Lt. Ford and Sgt. Johnson assert that Plaintiff was combative and refused to comply with their directives during the compliance check. According to the officers, Plaintiff refused to bring his personal belongings into compliance by placing them into his property box, and Plaintiff attempted to prevent the officers from removing his personal property. According to them, Plaintiff also refused to be placed into handcuffs. As a result, Lt. Ford told Sgt. Johnson to issue a short blast of mace towards Plaintiff to obtain his compliance.

But Plaintiff still did not comply. Instead, Plaintiff voluntarily went to the ground due to being sprayed with mace, and then, he jumped up and displayed a fighting stance towards the officers. Accordingly, Sgt. Johnson issued a second blast of chemical spray towards Plaintiff. After this second spray, Plaintiff complied, and the officers placed Plaintiff into handcuffs and escorted him to segregation, where he was evaluated by medical professionals. The entire encounter lasted (approximately) thirty minutes.

Plaintiff tells a completely different story. According to Plaintiff, Lt. Ford and Sgt. Johnson refused to hear any of his justifications as to why he was allowed to have the excessive personal property in his cell and not in his property box. Despite his protestations, Lt. Ford grabbed a garbage bag to dispose of Plaintiff's excess paperwork that was not within his personal property box. In addition, Plaintiff contends that Lt. Ford and Sgt. Johnson refused to allow him to retrieve and to show them his front cuff permit, which allows him to be handcuffed with his hands in front of his body rather than behind him. Plaintiff states that Lt. Ford told Plaintiff that he could either have his

5

paperwork thrown in the trash, or he could cuff up. Because Plaintiff did not want his paperwork to be destroyed, Plaintiff walked towards Lt. Ford and Sgt. Johnson so that he could be placed into handcuffs.

Even though he indicated that he would voluntarily be placed into handcuffs and even though he began to move towards Lt. Ford and Sgt. Johnson so that they could place the handcuffs on Plaintiff, Lt. Ford ordered Sgt. Johnson to "mace" Plaintiff. Plaintiff denies that he was being combative or threatening at the time. Nevertheless, Johnson sprayed Plaintiff with mace, and then, Lt. Johnson and Sgt. Johnson took Plaintiff to the floor in a violent manner. Once on the floor, Lt. Ford and Sgt. Johnson placed Plaintiff in handcuffs behind his back in contravention of his front cuff permit. Finally, Lt. Ford and Sgt. Johnson picked Plaintiff up off of the floor and carried him to segregation, where they left him uncomfortably restrained until medical personnel arrived.[2]

As this recitation by Plaintiff shows, the facts are clearly in dispute. If Plaintiff is to be believed as to what occurred, a reasonable jury could find that Lt. Ford and Sgt. Johnson acted with unconstitutional force against him on April 8, 2021. If Lt. Ford and Sgt. Johnson's story is to be believed, the amount of force that they used against Plaintiff on April 8, 2021, was justified, reasonable under the circumstances, and did not constitute excessive force for purposes of the Eighth Amendment. This dispute is

---

[2] Plaintiff claims that a "Code 3" emergency had to be issued in order to summon the medical personnel because he could not breathe as a result of being sprayed with the chemical agent.

something that a jury must decide. Therefore, Lt. Ford and Sgt. Johnson's motion for summary judgment on Plaintiff's excessive force claim against them is denied.

**B.      Questions of Fact Preclude Summary Judgment on Plaintiff's Deliberate Indifference Claim in violation of his Eighth Amendment Rights.**

Similarly, Lt. Ford and Sgt. Johnson are not entitled to summary judgment on Plaintiff's claim that they acted with deliberate indifference towards his serious medical needs in violation of his Eighth Amendment rights. Persons acting under the color of law violate the Constitution if they are deliberately indifferent to a prisoner's serious medical needs, serious mental health needs, or serious dental needs. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). The deliberate indifference standard requires a plaintiff to clear a high threshold in order to maintain a Constitutional claim. *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). "In order to prevail on a deliberate indifference claim, a plaintiff must show (1) that his condition was 'objectively, sufficiently serious' and (2) that the . . . officials acted with a sufficiently culpable state of mind." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008) (quoting *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005)); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) (same).

"A medical condition is serious if it 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Lee*, 533 F.3d at 509 (quoting *Greeno*, 414 F.3d at 653). "With respect to the culpable state of mind, negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense." *Id.*; *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994) ("We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.").

"Deliberate indifference is not medical malpractice; the [Constitution] does not codify common law torts. And although deliberate means more than negligent, it is something less than purposeful. The point between these two poles lies where the official knows of and disregards an excessive risk to inmate health or safety or where the official is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draws the inference." *Duckworth*, 532 F.3d at 679 (internal quotations and citations omitted). The Seventh Circuit has cautioned, however, that a plaintiff "need not prove that the . . . officials intended, hoped for, or desired the harm that transpired. Nor does a [plaintiff] need to show that he was literally ignored. That the [plaintiff] received some treatment does not foreclose

his deliberate indifference claim if the treatment received was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Arnett*, 658 F.3d at 751 (internal citations and quotations omitted).

Had Plaintiff based his deliberate indifference claim solely on his contention that he was not examined or treated by medical personnel after having been sprayed in the face with mace, being unable to breath, and being lifted and carried while handcuffed, the Court may have granted Lt. Ford and Sgt. Johnson's motion for summary judgment. The Court posits this position because, during his deposition, Plaintiff repeatedly testified that he received medical attention after Lt. Ford and Sgt. Johnson's physical assault against him because a Code 3 was issue to which medical personnel responded. *See* Plaintiff's Dep. at pgs. 57, 61, and 69.

However, Plaintiff also testified during his deposition that he had received a front cuff permit while at Hill based upon his medical condition and his medical needs. *Id*. at 46-47. According to Plaintiff, officials at Hill will issue a front cuff permit to an inmate based upon certain medical issues that the inmate has. *Id*. The Court knows from other cases that have been filed in this District that IDOC officials do not routinely issue front cuff permits to IDOC inmates. Therefore, if Plaintiff advised Lt. Johnson and Sgt. Johnson that he possessed a front cuff permit (which he claims that he did), and if Lt. Ford and Sgt. Johnson cuffed him behind his back (which Plaintiff claims that they did), and if being placed in handcuffs behind his back caused Plaintiff to experience pain (which Plaintiff claims that it did), a reasonable jury could find based upon these facts that Lt. Ford and Sgt. Johnson acted with deliberate indifference towards Plaintiff's

9

serious medical needs by failing to comply with Plaintiff's front cuff permit.[3] Again, this is a decision that a jury must make, and therefore, Lt. Ford and Sgt. Johnson's motion for summary judgment on Plaintiff's deliberate indifference claim against them is denied.

**C.**    **Questions of Fact Preclude Summary Judgment on Plaintiff's Retaliation Claim in violation of his First Amendment Rights.**

Finally, a reasonable jury could find in Plaintiff's favor on his First Amendment retaliation claim against Lt. Ford, Sgt. Johnson, and Lt. Matherly. Therefore, their motion for summary judgment on this claim is denied.

The United States Supreme Court has explained that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Similarly, the United States Court of Appeals for the Seventh Circuit has opined: "[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates. Like students who do not shed their free speech rights at the schoolhouse gates, neither do prison walls form a barrier separating prison inmates from the protections of the Constitution." *Bridges v. Gilbert*, 557 F.3d 541, 547-48 (7th Cir. 2009) (internal quotations and citations omitted).

---

[3] A reasonable inference may be drawn in ruling on Lt. Ford and Sgt. Johnson's motion for summary judgment that a correctional lieutenant and a correctional sergeant within the IDOC would understand and appreciate that an inmate who possessed a front cuff permit had, in all likelihood, obtained that front cuff permit based upon some medical condition that necessitated that the inmate only be placed in handcuffs with the inmate's hands in front of him.

In order "[t]o prevail on a First Amendment retaliation claim, [a plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Id*. at 546 (internal quotations omitted); *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (same); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). If the plaintiff is able to satisfy this *prima facie* case, the burden shifts to the defendant "to rebut with evidence that the [defendant's animus] though a sufficient condition was not a necessary condition of the conduct, *i.e.*, it would have happened anyway." *Green v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). If the defendant can make such a showing, the plaintiff "must then demonstrate that the defendant's proffered reasons for the decision were pretextual and that the retaliatory animus was the real reason for the decision." *Zellner v. Herrick*, 639 F.3d 371, 378-79 (7th Cir. 2011).

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir 2000). "A 'motivating factor' in this context 'is a factor that weighs in [on] the defendant's decision to take the action complained of-in other words, it is a consideration present to his mind that favors, that pushes him toward action." *Dace v. Smith-Vasquez*, 658 F. Supp. 2d 865, 881 (S.D. Ill. 2009) (quoting *Hasan v. United States Dept. of Labor*, 400 F.3d 1001, 1006 (7th Cir. 2005)). A

plaintiff may demonstrate that his speech was a motivating factor behind the defendant's retaliatory actions by presenting direct or circumstantial evidence. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012).

"Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 720 (7th Cir. 2005) (internal quotation omitted). Direct evidence is rare and is something along the lines of a direct admission. *Naficy v. Illinois Dept. of Human Servs.*, 697 F.3d 504, 512 (7th Cir. 2012); *Benders v. Bellows & Bellows*, 515 F.3d 757, 764 (7th Cir. 2008).

On the other hand, "[c]ircumstantial evidence . . . is evidence from which a trier of fact may infer that retaliation occurred." *Kidwell*, 679 F.3d at 966. "Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other[s] . . . ." *Long v. Teachers' Retirement Sys. of Illinois*, 585 F.3d 344, 350 (7th Cir. 2009). Regardless of whether the plaintiff offers direct or circumstantial evidence, "[t]o demonstrate the requisite causal connection in a retaliation claim, [a] plaintiff[] must show that the protected activity and the adverse action are not wholly unrelated." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). "If he can show that retaliatory animus was a factor, then the burden shifts to the defendants to prove that the same actions would have occurred in the absence of the protected conduct." *Soto v. Bertrand*, 2009 WL 1220753, * 1 (7th Cir. 2009).

Here, Plaintiff alleged in his Complaint that Defendants "shook down" his cell, sprayed him with mace, issued a disciplinary ticket to him, and transferred him to Menard in retaliation for him filing a large number of grievances and for filing a PREA complaint against a correctional officer at Hill. Defendants do no dispute that, in theory, filing grievances and a PREA complaint would constitute an activity protected by the First Amendment. Defendants also do not dispute that, if they had taken the actions against Plaintiff of which Plaintiff complains because he had submitted grievances and because he had filed a PREA complaint, their actions would violate Plaintiff's First Amendment rights.

But Defendants argue that Plaintiff has failed to provide any evidence that his First Amendment activities were a motivating factor in any of the actions taken by them against Plaintiff of which he complains. Moreover, Defendants contend that the compliance check was a randomly scheduled event for the entire house. Therefore, Defendants assert that they cannot be held liable for violating Plaintiff's First Amendment rights because the compliance check would have occurred regardless of Plaintiff engaging in any First Amendment protected activities.

Defendants are incorrect that Plaintiff has offered no evidence with which to raise a question of fact that his First Amendment protected activities were a motivating factor in any action(s) taken against Plaintiff. On the contrary, Plaintiff has offered affidavits from other inmates who were housed at Hill at the relevant time. In these affidavits, the inmates testify that Lt. Matherly and Lt. Ford confessed (in one form or another) that they were going to destroy Plaintiff's property and that they were going to

13

have him transferred because he had filed too many grievances and because he had filed a PREA complaint against a fellow officer. This testimony is sufficient to preclude summary judgment on Plaintiff's First Amendment claim.[4]

Defendants argue that the inmates' testimony is implausible and cannot constitute a dispute of fact for purposes of precluding summary judgment. According to them, they would never make such a confession to inmates, and no reasonable jury could find that they would make such statements to inmates.

But that is what the inmates have offered as testimony in their affidavits. Therefore, a jury must make a determination about the veracity and the credibility of Plaintiff and his witnesses, not this Court on summary judgment.

**IT IS, THEREFORE, ORDERED:**

1. **Defendants' motion for summary judgment [24] is DENIED.**

2. **Accordingly, this matter is referred to United States Magistrate Judge Eric I. Long for the purpose of conducting a settlement conference.**

3. **If the Parties are unsuccessful in their attempts to settle this case at a settlement conference with Magistrate Judge Long, the Court will establish a date upon which to conduct a final pretrial conference and a jury trial in order to bring this case to a resolution.**

---

[4] The inmates focus their testimony on Lt. Matherly and Lt. Ford. However, given Sgt. Johnson's direct participation in the compliance check of Plaintiff's cell and the aftermath that occurred, the Court will allow a jury to decide whether Sgt. Johnson retaliated against Plaintiff in violation of Plaintiff's First Amendment rights.

Entered this 15th day of September, 2025

_____ /s Colin S. Bruce_____
COLIN S. BRUCE
UNITED STATES DISTRICT JUDGE